FILED

2011 Feb-03  AM 11:01
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **DEBBIE L. HOLLAND,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.** |
| | ) | **1:09-cv-0380-PWG** |
| | ) | |
| **ST. VINCENT'S HEALTH SYSTEM, INC.** | ) | |
| **and ST. VINCENT'S ST. CLAIR, LLC,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM OPINION</u>

In this action, plaintiff Debbie L. Holland alleges that while in the employ of the defendants, St. Vincent's Health System, Inc. and St. Vincent's St. Clair LLC (collectively "St. Vincent's"), they subjected her to age and disability discrimination and retaliation in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 623 et seq. ("ADEA"), and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq. ("ADA").  The parties have consented to an exercise of plenary jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c)(1) and Rule 73, Fed. R. Civ. P.  (Doc.[1] 20).  St. Vincent has filed a motion for summary judgment.  (Doc. 12).  In addition, St. Vincent's has also filed a motion to strike portions of the plaintiff's affidavit submitted in opposition to St. Vincent's motion for summary judgment.  (Doc. 27).  Upon consideration, St. Vincent's motion to strike is due to be granted in part and denied in part and that St. Vincent's motion for summary judgment is due to be granted in part and denied in part.

---

[1]  References herein to "Doc. __" are to the docket numbers assigned by the clerk of the court to the pleadings filed in this matter.

## I.      SUMMARY JUDGMENT STANDARDS

Federal Rule of Civil Procedure 56(c)(2) provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  The party moving for summary judgment

> bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial.  Only when that burden has been met does the burden shift to the nonmoving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment.

*Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see also Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).  Once the moving party has met its burden, Rule 56(e), FED. R. CIV. P., "requires the nonmoving party to go beyond the pleadings and by affidavits, or by the 'depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.' " *Celotex*, 477 U.S. at 324.  "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.  Accordingly, in its review of the evidence, a court must credit the evidence of the non-movant and draw all justifiable inferences in the non-movant's favor.  *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 848 (11th Cir. 2000).

2

## II.    BACKGROUND[2/]

St. Vincent's operates five healthcare facilities in north central Alabama: St. Vincent's Birmingham, St. Vincent's East, St. Vincent's St. Clair, St. Vincent's Blount, and St. Vincent's One Nineteen.  The plaintiff, born in 1952, worked at St. Vincent's St. Clair (the "St. Clair facility") located in Pell City, Alabama.  Beginning in 2000, she was employed as a Home Health Aid, and she became an Admitting Clerk for outpatients about a year later.  In March 2006, the plaintiff applied for and was awarded the position of "Monitor Technician" in the Intensive Care Unit ("ICU") on the 7 p.m. to 7 a.m. overnight shift.

Seeking a return to a day shift position, the plaintiff applied for an opening for a Unit Secretary for the Operating Room ("OR Unit Secretary") in September, 2007.  Susan Powell, the Director of Surgical Services at St. Vincent's St. Clair, interviewed the applicants for the OR Unit Secretary position.  She concluded that the plaintiff and another applicant, Kim Parker, were the two most qualified candidates.  Powell ultimately selected Parker, who was under forty years of age.  The plaintiff asked for an explanation for her rejection and also complained that she believed that it was because of age.  Not satisfied with St. Vincent's resolution of her complaint, the plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on November 29, 2007, asserting that she had been denied the position because of age, in violation of the ADA.  (DX 21 to Plaintiff's Deposition ("Pl. Dep."), Doc. 14-3).

---

[2/]    The facts set out below are gleaned from the parties' submissions and are viewed in a light most favorable to the plaintiff. They are the "'facts' for summary judgment purposes only.  They may not be the actual facts. *See Cox v. Administrator U.S. Steel & Carnegie*, 17 F. 3d 1386, 1400 (11th Cir. 1994)."  *Underwood v. Life Insurance Co. of Georgia*, 14 F. Supp 2d 1266, 1267 n.1 (N.D. Ala 1998).

In January, 2008, as her EEOC charge remained pending, the plaintiff requested leave under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq., based upon her physician's diagnosis of diabetes and hypertension. St. Vincent's granted the plaintiff's request for FMLA leave, which began on or about February 7, 2008. Shortly before the 12 weeks of her FMLA leave was to expire on April 30, 2008,[3/] the plaintiff provided St. Vincent's with documentation from her physician releasing her to return to work as of that date but with a restriction that she work only day shifts allegedly because of problems controlling her diabetes and hypertension when working nights. Lisa Davis, the HR manager at the St. Clair facility received such documents from the plaintiff and forwarded them to her supervisors at corporate HR, Ashley Haynes and Katie Chamblee, in an e-mail with the unusual subject line "Guess Who Sent Us Something - Debbie Holland." (Doc. 25-4, PX 3 to Deposition of Ashley Haynes ("Haynes Dep."), Doc. 25-1). In a letter dated May 12, 2008, St. Vincent's told the plaintiff that it could not grant her requested accommodation at that time because there was not an available Monitor Tech or desk position on the day shift. (PX 6 to Haynes Dep., Doc. 25-7). St. Vincent's further advised the plaintiff both verbally and in writing, however, that all available jobs in the St. Vincent's system were posted on its website. She was encouraged to apply online for a transfer to any position that interested her. During that same time frame, St. Vincent's also recommended to the plaintiff that she might apply for additional time off under the company's policy authorizing employees to take a medical leave of absence that continued their benefits, without guaranteeing continued employment, for up to one year, including the time spent

---

[3/]  The FMLA allows qualifying employees to take up to 12 weeks per year of unpaid leave because of "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D).

on FMLA leave.  The plaintiff subsequently applied for and was granted such an extended medical leave of absence.

While remaining out on leave the plaintiff took a job at a J.C. Penney department store in about April or May, 2008.  The plaintiff also continued to monitor the St. Vincent website to look for job postings, and it is undisputed that she submitted online transfer applications for two positions while on her medical leave of absence.  First, on May 16, 2008, the plaintiff submitted an online application for a part-time Surgical Reprocessing Technician ("SRT") position at the St. Clair facility that the she saw posted as available on the St. Vincent's website.  On May 22, 2008, the plaintiff received an e-mail from a Kristin Costanzo of St. Vincent's referencing her application for the SRT and stating as follows:

> Thank you for your employment interest at St. Vincent's.  Unfortunately, the position you applied to has been filled.  After reviewing your credentials we will maintain you application for future opportunities.  We look forward to speaking with you when similar positions arise at St. Vincent's Health System.  Please feel free to register with our career mail service to receive updates regarding new positions. Recruitment Team at St. Vincent's Health System.

(Exhibit A to Plaintiff's Affidavit ("Pl. Aff."), Doc. 24-1, at p. 9 of 12)

Notwithstanding the above e-mail advising that the position for which the plaintiff applied had been "filled," the evidence establishes that Lisa Davis had accessed St. Vincent's online system on May 19, 2008, and closed the vacancy, posting a note on the internal system indicating that the SRT position had been "cancelled" as part of a 75-day plan to bring operations back to budget by the end of the fiscal year.  Haynes further explained that the position was one of many positions across the St. Vincent's system that had been designated for cancellation in 2008 pursuant to the 75-day budget plan, before the plaintiff ever applied.  She stated that the position was left posted online

inadvertently and was removed immediately once the plaintiff's application brought its continued existence to Davis's attention.  Ultimately, Hayes maintains that the vacancy was not filled by anyone at that time.

Shortly afterwards, the plaintiff applied for the other posted opening, for a "Lab Clerk" position at the St. Vincent's East facility, located in or near the Centerpoint section of Birmingham. When applying, however, the plaintiff was under the mistaken impression that the job was at St. Vincent's St. Clair in Pell City.  St. Vincent's considered her qualified for the Lab Clerk position and invited her for an interview.  At that point, though, the plaintiff was told that the position was at St. Vincent's East, which she considered too far a drive from home.  As a result, the plaintiff withdrew her candidacy.

On May 30, 2008, the plaintiff filed an amendment to her still-pending EEOC charge filed in November, 2007.  In that amended charge, the plaintiff alleged that St. Vincent's had violated the ADA by refusing to accommodate her disability stemming from her diabetes and hypertension and by denying her requests for transfer to available day shift positions for which she was qualified.  The plaintiff further alleged that St. Vincent's refusal to transfer her to a day shift violated the ADEA, both because such amounted to discrimination because of age and was also in retaliation for her filing of the original EEOC charge alleging age discrimination in her earlier non-selection for the OR Unit Secretary transfer.  On December 1, 2008, the EEOC issued a right-to-sue notice to the plaintiff at her request, closing its investigation of her original and amended charges.

On October 25, 2008, the plaintiff sent a letter to Davis stating that she remained interested in moving to an available day shift position at the St. Clair facility.  (PX 8 to Haynes Dep., Doc. 25-9).  The plaintiff further stated that she was having trouble finding such jobs because the St.

Vincent's website kept saying that there were no available positions but that she did "know" that jobs were, in fact, coming open and being offered to those with less seniority and experience.   Davis forwarded the letter to Haynes who then discussed it with Chamblee.   Haynes told Davis that a decision had been made not to respond to the plaintiff's letter and that Davis should not make any further contact.   Haynes further instructed Davis that if the plaintiff continued to send information or calls, Haynes would handle the inquiry.

On or about February 6, 2009, the plaintiff's one-year medical leave of absence expired.   At that time, she had not transferred to an available position within the St. Vincent's health system. Pursuant to St. Vincent's medical leave policy, her employment was terminated.

On February 25, 2009, the plaintiff filed this action against St. Vincent's. (Doc. 1, Complaint "Compl."). In Count I of her complaint, she alleges that St. Vincent's discriminated against her because of disability in violation of the ADA by refusing to accommodate her disability by not granting her request for a transfer to a day shift position.   In Count II, she asserts that St. Vincent's engaged in unlawful age discrimination by denying her requests for transfer to one or more positions within the company.   Finally, in Count III, the plaintiff maintains that St. Vincent's retaliated against her in violation of the ADA and the ADEA for complaining about age discrimination and for filing EEOC charges by denying the plaintiff's requests for a transfer or reinstatement to open day shift positions for which she was qualified.

After completion of discovery, St. Vincent's moved for summary judgment on all claims. The parties have filed briefs and evidence in support of their respective positions on that motion, which is now ripe for decision.   In addition, St. Vincent's has filed a motion to strike portions of the

plaintiff's affidavit, which is included in her evidentiary submission in opposition to St. Vincent's motion for summary judgment.

## III.   DISCUSSION

### A.   Age Discrimination Claim Based on Non-Selection for OR Unit Secretary

One aspect of the plaintiff's cause of action is her claim that St. Vincent's discriminated against her because of age in failing to select her for the OR Unit Secretary position in the fall of 2007.   The ADEA generally makes it unlawful for an employer to discriminate because of age against an individual at least forty years old with respect to compensation, terms, conditions, or privileges of employment, *see* 29 U.S.C. §§ 623(a)(1), 631(a), including in connection with promotions and materially advantageous transfers. *See Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1432 (11th Cir. 1998). The parties agree that the plaintiff attempts to prove this claim using circumstantial, rather than direct, evidence of discriminatory intent, thus calling for the application of the burden shifting framework first articulated in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973), to analyze circumstantial evidence in the Title VII context. *See Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000) (en banc). Under the *McDonnell Douglas* framework, the plaintiff has the initial burden to prove a *prima facie* case of discrimination. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981). "Under the *McDonnell Douglas* scheme, '[e]stablishment of the *prima facie* case in effect creates a presumption that the employer unlawfully discriminated against the employee.'" *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506 (1993) (quoting *Burdine*, 450 U.S. at 254). This presumption "places upon the defendant the burden of producing an explanation to rebut the *prima facie* case- *i.e.*, the burden of 'producing evidence' that the adverse employment actions were taken 'for a legitimate,

8

nondiscriminatory reason.'" *Id.*, 509 U.S. at 506-07 (quoting *Burdine*, 450 U.S., at 254).  Once the defendant produces sufficient evidence to support a nondiscriminatory explanation for its decision, the plaintiff must be afforded the "opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Burdine*, 450 U.S. at 253.  "Although intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000) (*quoting Burdine*, 450 U.S. at 253).

A plaintiff may establish a *prima facie* case of unlawful age discrimination in the failure-to-promote context based upon evidence of the following: (1) she was at least 40 years old; (2) she was qualified for and applied for an available position; (2) despite her qualifications, she was rejected; and (4) the position was filled with an individual who was "substantially younger." *See Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1359 (11th Cir. 1999); *see also Walker v. Mortham*, 158 F.3d 1177, 1192-93 (11th Cir. 1998) (discussing the elements of the *prima facie* case for failure-to-hire and failure-to-promote claims).  St. Vincent's does not contest that the plaintiff can establish a *prima facie* case.  Rather, St. Vincent's argues that it has articulated a number of legitimate reasons why the plaintiff was rejected for the OR Unit Secretary position in favor of Kim Parker and that the plaintiff cannot show that those reasons are pretextual.

At the second step of the *McDonnell Douglas* framework, the burden shifts to the employer to introduce admissible evidence sufficient to indicate that the adverse action against the plaintiff was taken "for a legitimate, non-discriminatory reason." *Burdine*, 450 U.S. at 254-55.  Thus, the

9

defendant's burden is one of production, not persuasion, and "[i]t is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Id.* The defendant need not affirmatively prove the absence of discriminatory motive. *Board of Trustees of Keene State College v. Sweeney*, 439 U.S. 24, 25 (1978) (per curiam). "As this burden involves no credibility determination, *St. Mary's Honor Center*, 509 U.S. at 509, it has been characterized as 'exceedingly light.' *Perryman v. Johnson Prod. Co.*, 698 F.2d 1138, 1141 (11th Cir. 1983)." *Vessels,* 408 F.3d at 770. "So long as the employer articulates 'a clear and reasonably specific' non-discriminatory basis for its actions, it has discharged its burden of production." *Id.* (quoting *Burdine*, 450 at 254-55).

To meet the intermediate burden, St. Vincent's has submitted a declaration from Susan Powell, who the parties agree made the decision to select Parker over the plaintiff.   In that declaration, signed pursuant to 28 U.S.C. § 1746, Powell states in relevant part:

> As Director of Surgical Services, I created a new position of Unit Secretary for the Operating Room.  From my perspective, this position would be in (sic) unique because it involved clinic, surgery and procedure patients on the same floor.  It also required frequent interaction with our internal and external laboratories.

> I reviewed the credentials of the various applicants for the position and interviewed those who met the qualifications for the position.  Of the several candidates I interviewed, I determined that Kim Parker and Debbie Holland [the plaintiff] were the best qualified candidates for the position.  I interviewed both and discussed the position and their respective work experience with each of them.

> Although both were qualified, I ultimately selected Ms. Parker for the position based upon her interview and her experience, specifically her experience as a Unit Secretary in Medical Surgical Unit and in the Emergency Room, and experience as a Lab Technician.  Her experience as a Lab Technician included knowledge of both our internal lab and computer programs as well as our out-sourced lab and pathology and their systems. This experience would be extremely helpful as the new position would be involved in interfacing with both internal and external labs on a regular basis.

(Susan Powell Declaration ("Powell Decl."), Doc. 14-1, ¶¶ 2-4).  The plaintiff does not seriously contest that St. Vincent's has satisfied the intermediate burden.  Accordingly, summary judgment on this claim is resolved by considering the third and final aspect of the *McDonnell Douglas* framework: pretext.

An employee may satisfy her burden of showing that employer's articulation of legitimate non-discriminatory reasons for its action is a pretext for unlawful discrimination either by offering evidence that an employer more likely than not acted with a discriminatory motive, or by showing that its proffered reasons are not credible, unless the record conclusively shows that the real motive was a non-proffered reason that is non-discriminatory.  *Alvarez v. Royal Atlantic Developers, Inc.*, 610 F.3d 1253, 1265 (11th Cir. 2010) (citing *Burdine*, 450 U.S. at 256; *Reeves*, 530 U.S. at 148). The plaintiff acknowledges that she has no evidence that the decisionmaker, Susan Powell, (nor anyone else at St. Vincent's, for that matter) made statements indicating a bias against older workers. Instead, the plaintiff attempts to prove pretext only by showing that Powell's explanation is not credible.  To show pretext based on the lack of credibility of the employer's reasons, an employee must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence."  *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir.1997) (citation omitted).  "[A] plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated."  *Reeves*, 530 U.S. at 148.  However, "[a] plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute [her] business judgment for that of the employer.  Provided that the proffered reason is one that

11

might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and [she] cannot succeed by simply quarreling with the wisdom of that reason." *Chapman,* 229 F.3d at 1030.  Further, it is not enough to show simply that the employer was mistaken in its beliefs or in its assessment of underlying events or circumstances; the plaintiff must present evidence reasonably suggesting that the employer is being dishonest in its account of its behavior.  *See Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1471 (11th Cir. 1991); *Walker v. NationsBank of Fla. N.A.*, 53 F.3d 1548, 1564 & n.7 (11th Cir. 1995) (Johnson, J., specially concurring).  As the Eleventh Circuit stated, "The inquiry into pretext centers on the employer's beliefs, not the employee's beliefs and, to be blunt about it, not on reality as it exists outside of the decision maker's head."  *Alvarez,* 610 F.3d at 1266.  Where an employer offers multiple reasons for an employment action, in order to survive judgment in this circuit, the employee generally bears the burden to rebut each articulated reason.  *Crawford v. City of Fairburn, Ga.*, 482 F.3d 1305 (11th Cir. 2007) (citing *Chapman*, 229 F.3d at 1037); *Watkins v. Sverdrup Tech., Inc.*, 153 F.3d 1308, 1316-17 (11th Cir. 1998); *Combs v. Plantation Patterns*, 106 F.3d 1519, 1543 (Ala. 1997).

The plaintiff makes omnidirectional arguments in support of her claim of pretext.  First, she seeks to undermine the factual basis for the underlying the reasons offered by St. Vincent's as they relate to her and Parker's respective work experience.  The plaintiff suggests that one of the reasons purportedly offered by St. Vincent's is that "Parker had more unit secretary experience." (Pl. Summ. J. Brief at 23).  The plaintiff maintains that such reason is, in fact, false.  "In actuality," the plaintiff retorts in her affidavit, "I had four to five years more Unit Secretary experience than Ms. Parker." (Pl. Aff., Doc. 24-1, ¶ 15).  St. Vincent's has moved to exclude that affidavit statement, amongst others, from the court's consideration, on the theory that the plaintiff has not shown how she

supposedly has personal knowledge of Parker's work history and experience at St. Vincent's. (Defendants' Motion to Strike ("Dfts. Mot. to Strike"), Doc. 27, ¶ 2); *see* Rule 56(e)(1), Fed. R. Civ. P., *Sammons v. Taylor*, 967 F.2d 1533, 1545 n.6 (11th Cir. 1992); *see also* Rule 602, Fed. R. Evid. The plaintiff has responded by observing that her affidavit contains an introductory statement asserting that she has personal knowledge of all matters contained therein, and she further offers that the fact that both she and Parker worked at the St. Vincent's St. Clair facility is enough to show that the plaintiff has personal knowledge.

Despite the affidavit's clear boilerplate allegation of personal knowledge, the plaintiff has established her competency under Rule 56(e)(1) to offer her testimony about Parker's work history or job duties. However, even if the plaintiff's affidavit statement about the two candidates' relative Unit Secretary experience is considered, the evidence fails to create a triable issue on the question of pretext. Contrary to the plaintiff's assertion, Powell did not state that she awarded the OR Unit Secretary position to Parker because she thought that Parker had "more" Unit Secretary "experience" than did the plaintiff or that Parker performed such types of duties over a longer period of time. What Powell actually testifies is that she based her selection in part on Parker's "experience as a Unit Secretary in Medical Surgical Unit and in the Emergency Room." (Powell Decl. ¶ 4). Powell likewise highlighted Parker's experience as a Unit Secretary in those particular departments in an e-mail dated December 11, 2007, in which Powell explained the basis of her decision for OR Unit Secretary, in which she stated that she had been swayed by the fact that Parker "had held a unit secretary position previously and would bring that experience to our department; a very busy and high volume area like the ER." (DX 1 to Deposition of Michelle Galipeau ("Galipeau Dep."), Doc. 25-16, Bates D00239-D00240). The plaintiff has testified that her job duties as an Admitting Clerk

for outpatients and then later as a Monitor Technician in the ICU did include, in part, the performance of some tasks in those areas that are generally *associated with* those of a "Unit Secretary."  The evidence shows that plaintiff never actually held the title of "Unit Secretary" nor did she perform that job as a *dedicated* position, in the ER, the Medical/Surgical unit, or any other department.  (*See* Pl. Aff. ¶ 5 ("While it is true I held the job title Admitting Clerk, my job duties in that position also included Unit Secretary work."); DX 3 to Pl. Dep., Bates P00442 (memo recognizing that the plaintiff was awarded a "Monitor Technician" position in the ICU); Pl. Dep. at 10-14 (discussing her job duties)).  Powell's e-mail supports that such was her interpretation of the plaintiff's prior jobs at St. Vincent's.  (*See* PX 1 to Galipeau Dep., Doc. 25-16 (noting that, during her interview, the plaintiff "described her current role as a monitor tech in ICU and described duties she had performed in previous positions she had held in the hospital.  She had worked as a Home Health Assistant, an Admitting Clerk for outpatients, and an Outpatient Registration Clerk prior to transferring to ICU.")).  In contrast, Parker not only held the job title of "Unit Secretary," she did so in at least one area of the hospital, the ER, that Powell remarked she considered to be similar in material respects to the department in which the sought position would be stationed.  At the very least, Powell's testimony indicates that such was her belief and that it was a motivating factor in her decision.  While the plaintiff may quibble with the wisdom or persuasiveness of Powell's stated reason, it is one that might motivate a reasonable employer.  The plaintiff has not presented sufficient evidence calling into question the sincerity of Powell's beliefs and motives relative to this articulated reason, and the plaintiff has thus failed to make a sufficient showing of pretext on the matter.

The plaintiff likewise takes issue with Powell's second stated reason that she was motivated in part by Parker's experience as a Lab Technician, which, Powell noted, "included knowledge of

both our internal lab and computer programs as well as our out-sourced lab and pathology and their systems." (Powell Decl. ¶ 4). The plaintiff suggests that Powell's explanation is unworthy of credence for two reasons. First, the plaintiff asserts that, during the application or interview process, she was never specifically advised by Powell or anyone else that laboratory experience was a "qualification necessary" for the position, nor was she asked about such experience. (Pl. Aff. ¶¶ 17-18). Second, the plaintiff suggests that Parker did not have laboratory experience that was actually superior to her own, at least as might relate to the duties of OR Unit Secretary. Rather, the plaintiff maintains in her affidavit, the "only difference in Ms. Parkers' laboratory experience in comparison to mine was that Ms. Parker had worked as a phlebotomist," which, the plaintiff says, would not be a task performed by the Unit Secretary (Pl. Aff. ¶ 21).

St. Vincent's has objected to the admissibility of the plaintiff's assertion that the "only difference" between Parker's lab experience and her own is that the former worked as a phlebotomist. St. Vincent's again argues that the plaintiff has not shown that she has personal knowledge of Parker's specific job duties and work experience. Even if the statement is considered, however, it does not alter the result of the pretext analysis. The plaintiff's statement is conclusory and has virtually no probative value. The statement reflects little more than the plaintiff's own estimation of her qualifications and experience relative to those of Parker as it relates to the lab. Because the pretext inquiry focuses upon the beliefs of the decisionmaker, "'an employee's own opinions about his qualifications do not give rise to a material factual dispute." *Lee v. GTE Florida*, Inc., 226 F.3d 1249, 1254 (11th Cir. 2000) (quoting *Simms v. Oklahoma ex rel. Department of Mental Health and Substance Abuse Services*, 165 F.3d 1321, 1329 (10th Cir. 1999) (ellipses and brackets in *Lee* omitted)). While the plaintiff emphasizes that she "also had experience working *with*

15

the laboratory personnel and working with the internal and external laboratory procedures," (Pl. Aff. ¶ 19 (emphasis added)), it is undisputed that she did not ever work "*in*" the lab, as a technician or otherwise, as did Parker.  Although St. Vincent's does not contend that such experience was a minimum qualification required for the position, the plaintiff has failed to show that a reasonable employer might not consider such experience in a candidate to be a "plus" factor weighing in favor of their selection.  Nor has the plaintiff undercut Powell's testimony that she, in fact, did so.[4]

"'When two candidates are equally qualified in that they both possess the objective qualifications for the position and neither is clearly better qualified, it is within the employer's discretion to choose among them so long as the decision is not based on unlawful criteria.'"  *Lee*, 226 F.3d at 1254 (quoting *Simms*, 165 F.3d at 1329-30).  Thus, "a plaintiff must show that the disparities between the successful applicant's and his own qualifications were 'of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff.'" *Springer v. Convergys Customer Mgmt. Group, Inc.*, 509 F.3d 1344, 1349 (11th Cir. 2007) (quoting *Cooper v. Southern Co.*, 390 F.3d 695, 732 (11th Cir. 2004) (citation omitted)). The plaintiff has not made such a showing.  Finally, to the extent that the plaintiff suggests that pretext may be inferred on the basis that Parker's phlebotomy skills as a lab technician would be of no use in performing the duties of OR Unit Secretary, the argument is irrelevant.  Neither Powell nor anyone else at St. Vincent's intimated that either the possession or lack of phlebotomy skills or experience had anything to do with Parker being selected.  That "reason" was created entirely by the

---

[4]     The plaintiff faces somewhat of an uphill battle in her attempts to impeach Powell's explanation for why she allegedly selected Parker rather than the plaintiff for the OR Unit Secretary job.  This is because the plaintiff does not dispute that Powell was the lone decisionmaker, and, for whatever reason, it does not appear that the plaintiff deposed Powell.  At any rate, no deposition transcript from Powell is in the record.

plaintiff, based upon her own testimony that Powell's phlebotomy skills were ostensibly the only difference between Parker's lab experience and her own.

The plaintiff attempts to prove pretext by arguing that St. Vincent's has given "fundamentally different justifications" for its decision to select Parker instead of the plaintiff.  (Plaintiff's Brief in Opposition to Motion for Summary Judgment ("Pl. Brief"), Doc. 24, at 23).  First, she claims that when she initially inquired about why she had not been selected for the position, she was told by Yancy Trucks, the then-HR Manager at St. Vincent's St. Clair, that she was "not a good fit" or that Parker was "a better fit" for the position.  It is true that an employer's shifting rationale for its action can be evidence of pretext.  *See Hurlbert v. St. Mary's Health Care Syst., Inc.*, 439 F.3d 1286, 1299 (11th Cir. 2006); *Tidwell v. Carter Prods.*, 135 F.3d 1422, 1428 (11th Cir. 1998); *Howard v. BP Oil Co.*, 32 F.3d 520, 525 (1994).  However, Trucks's remark has little to no probative value. At the outset, it is so vague that it is difficult to say that it is even inconsistent with the explanation given by Powell, who undisputedly was the sole decisionmaker.  *See Zaben v. Air Prods. & Chemicals, Inc.*, 129 F.3d 1453, 1458-59 (11th Cir. 1997).  Further, because Trucks played no role in the employment decision, her remark does not undercut the credibility of Powell's proffered explanation.[5]  *See Steger v. General Elec. Co.*, 318 F.3d 1066, 1079 (11th Cir. 2003) ("'statements made by nondecisionmakers' ... will not satisfy an employee's burden [to prove pretext]") (quoting *Price Waterhouse v. Hopkins*, 490 U.S. 228, 277 (1989) (O'Connor, J., concurring)); *Mitchell v.*

---

[5]     The context in which Trucks allegedly made this remark is also entirely unclear.  An inconsistent explanation related by a nondecisionmaker may tend to carry material weight in the pretext inquiry when made on behalf of the employer in a more formal setting, such as in a written response to an EEOC charge, official employee grievance, or to interrogatories propounded pursuant to Rule 33, Fed. R. Civ. P.  In such circumstances, the employer should generally understand that its explanation is "for the record," so to speak, and the employer would typically have had an opportunity and an incentive to obtain a clear explanation from the individuals who participated in making the challenged employment decision.  For all that appears here, by contrast, Trucks's statement was a mere verbal utterance made informally to the plaintiff to put her off from complaining further.

*USBI Co.*, 186 F.3d 1352, 1354-55 (11th Cir. 1999) (employee could not prove pretext based on statements by nondecisionmakers to the effect that the plaintiff was qualified for the job at issue nor with statements by other nondecisionmakers indicating an age bias on their own part); *Schoonmaker v. Spartan Graphics Leasing, LLC*, 595 F.3d 261, 269 (6th Cir. 2010) (holding that the plaintiff failed to create an issue on pretext based upon allegedly inconsistent reasons offered by nondecisionmakers where the decisionmaker's own explanation had remained consistent); *Loeb v. Best Buy Co.*, 537 F.3d 867, 873 (8th Cir. 2008) (discounting the pretext value of correspondence written by nondecisionmakers purporting to state reasons for why the plaintiff had been fired that were different from those offered by the admitted decisionmakers).

The plaintiff suggests that St. Vincent's failed to follow its own policies and procedures in the selection process.  First, the plaintiff maintains that St. Vincent's did not adhere to its written policy stating, "In the event that two or more associates possess equal qualifications, length of service with the organization, department, or job title will be considered [in making transfer selections]."  (PX 1 to Galipeau Dep., Bates T00106).  The plaintiff says that Trucks told her that she and Parker had "equal qualifications" for the OR Unit Secretary position.  The plaintiff further claims that she has greater seniority than does Parker, which should have broken the tie in the plaintiff's favor, she says.  The plaintiff also highlights that Michelle Galipeau, a St. Vincent's HR director, initially stated in her deposition that she was unaware of the policy and that, when she was shown a copy, she claimed that it applied only when the candidates were "exactly even."

An employer's departure from established policies, procedures, or practices when taking an employment action may be evidence of pretext.  *See Hurlbert*, 439 F.3d at 1299.  But even assuming that Parker had greater seniority as she claims, the evidence in question does not show pretext.

18

Again, neither Trucks nor Galipeau were involved in the employment decision.  Therefore, it does not really matter what Trucks thought or said about the relative qualifications of the plaintiff and Parker, nor what Galipeau understood regarding how seniority was to be considered under St. Vincent's transfer policy.  What matters instead is what the decisionmaker, Powell, thought, did, and said.  There is no evidence in the record regarding what she knew of the policy or how she thought it might have applied.  Moreover, her statements consistently indicate that she considered the qualifications of the plaintiff and Parker to be close, but not equal.  Rather, Powell states that she deemed Parker's prior job experience at St. Vincent's to be marginally superior and that she made her selection on that basis.  Thus, Powell's apparent failure to weigh seniority does not indicate that she violated the policy, never mind that her proffered explanation is a pretext.

The plaintiff also claims that Powell departed from a St. Vincent's "practice" by failing to speak to her supervisor and review her personnel record when considering who to pick for the transfer to the OR Unit Secretary position.  The plaintiff has testified in her affidavit that, "[i]n the past, it was [St. Vincent's Health System] practice" to do so when making a transfer decision.  (Pl. Aff. ¶ 7).  St. Vincent's has moved to exclude the plaintiff's statement in that regard on the theory that she has failed to demonstrate affirmatively how she purports to have personal knowledge of such fact.  (Dfts. Mot. to Strike at 1-2); *see also* Rule 56(e), Fed. R. Civ. P.  But, again, even if the court considers the statement, it does not tend to prove pretext.  "The mere fact that an employer failed to followed its own internal procedures does not necessarily suggest that the employer was motivated by illegal discriminatory intent or that the substantive reasons given by the employer for its employment decision were pretextual."  *Springer v. Convergys Customer Mgmt. Group, Inc.*, 509 F.3d 1344, 1350 (11th Cir. 2007) (quoting *Randle v. City of Aurora*, 69 F.3d 441, 454 (10th Cir.

19

1995) (emphasis in *Springer* omitted)); *see also Mitchell*,186 F.3d at 1355-56.  The plaintiff's statement suggests only that there was some apparently unwritten "practice" followed "in the past" by some unidentified persons with unspecified frequency to "speak with" an employee's supervisor and "review" an employee's "personal file" before making a transfer decision.  The plaintiff has not endeavored to set forth specific underlying facts, nor does she assert that anyone was actually required to comply with such "practice" or that Powell had observed the practice previously and departed from it.  Powell testified that she "reviewed" the credentials of both Parker and the plaintiff and interviewed them both, at which time she discussed the position they sought and their respective work experience.  (Powell Decl. ¶¶ 3-4).  The plaintiff has not specifically disputed Powell's testimony in those regards.  Nor is there any claim or evidence that such interviews and review on Powell's part were cursory or insubstantial such that it might be inferred that the process was but a sham designed to hide a preordained decision to select Parker.  Any purported deviation from St. Vincent's alleged past practice appears minimal at most and does not support an inference of discrimination or pretext.

Finally, the plaintiff asks the court to draw an inference adverse to St. Vincent's on the issue of pretext based upon the alleged spoliation of evidence.  Specifically, the plaintiff argues that St. Vincent's is guilty of spoliation because it failed to preserve and produce a copy of Parker's transfer request form that she would have used to apply for the OR Unit Secretary position.  Likewise, the plaintiff complains that the bottom half of the copy of the plaintiff's transfer request form for the position that St. Vincent's produced is obscured.  Namely, the top half of the form has been "double scanned" or "double printed," so to speak, over the bottom half of the form.  (PX 13 to the Haynes Dep., Doc. 25-14).  The plaintiff contends that such transfer request forms are "key evidence" in the

20

case because they would have been considered by Powell and she might have potentially marked them with notes regarding her selection process.

"In the Eleventh Circuit, 'an adverse inference is drawn from a party's failure to preserve evidence only when the absence of that evidence is predicated on bad faith.'" *Mann v. Taser Intern., Inc.*, 588 F.3d 1291, 1310 (11th Cir. 2009) (quoting *Bashir v. Amtrak*, 119 F.3d 929, 931 (11th Cir.1997) (per curiam)).   "While this circuit does not require a showing of malice in order to find bad faith, mere negligence in losing or destroying records is not sufficient to draw an adverse inference." *Id.* (citing *Bashir*, 119 F.3d at 931); *see also Penalty Kick Management Ltd. v. Coca-Cola Co.*, 318 F.3d 1284, 1293-94 (11th Cir. 2003).   There is simply no evidence that St. Vincent's acted in bad faith with regard to either transfer request form at issue.   Rather, the only evidence is that once St. Vincent's received a copy of the plaintiff's EEOC charge filed in late November, 2007, it made a diligent search to obtain all relevant records but was unable to unearth a transfer form for Parker for the OR Unit Secretary vacancy and found only the obscured, "scanned" version of the plaintiff's transfer form that is in the record.   (*See* Haynes Dep., Doc. 25-1, at 34-37).   There is no basis for drawing an adverse inference against St. Vincent's premised upon alleged spoliation.

The plaintiff has failed to present sufficient evidence at the pretext stage to rebut the lawful reasons offered by St. Vincent's for selecting Parker over the plaintiff for the OR Unit Secretary position.   Therefore, St. Vincent's motion for summary judgment is due to be granted as it relates to the plaintiff's claim that she was denied that position because of age, in violation of the ADA.

**B.**     **Disability Discrimination and Retaliation under the ADA and ADEA**

    **1.**     **Introduction**

The other aspect of the plaintiff's cause of action relates to St. Vincent's alleged failure to transfer her to a number of allegedly available day shift positions after her FMLA leave expired on or about April 30, 2008.  The plaintiff alleges that such failure violated the anti-discrimination provision of the ADA and the anti-retaliation provisions of both the ADA and the ADEA.  Specifically, it appears that the plaintiff is now claiming that St. Vincent's is liable under those statutes based on a failure to transfer or otherwise award her the following twelve positions at the St. Clair facility:

    (1) Surgical Reprocessing Technician, Surgical Services Dept., open from 1/14/08 to 5/19/08

    (2) Unit Secretary, Emergency Dept., open from 7/8/08 to 8/18/08

    (3) Unit Secretary, Emergency Dept., open from 8/29/08 to 9/2/08

    (4) Unit Secretary, Medical/Surgical Dept., open from 9/30/08 to 11/4/08

    (5) Unit Secretary, Emergency Dept., open from 10/23/08 to 11/7/08

    (6) Surgical Reprocessing Technician, Surgical Services, open from 12/4/08 to 1/11/09

    (7) Patient Access Representative, open from 4/15/09 to 6/15/09

    (8) Unit Secretary, Emergency Dept., open from 5/29/09 to 6/29/09

    (9) Receptionist, Pell City Clinic, open from 7/3/09 to 7/27/09

    (10) Patient Access Representative, Admitting Dept., open from 9/18/09 to 10/5/09

    (11) Admitting Clerk, applied for February 21, 2010.

    (12) Admitting Clerk, applied for April 9, 2010.

(*See* Pl. Brief at 18, ¶ 91; *id.* at 19, ¶ 95).  For the sake of convenience, the court will at times refer to the foregoing positions simply by number on the above list (*e.g.*, "position 5").

Also considered in this section are the plaintiff's claims under the ADA and the ADEA that she was unlawfully discharged.  These claims are related to the above failure-to-transfer claims insofar as St. Vincent's maintains that the plaintiff was terminated automatically on or about February 6, 2009 because she had not secured a position with the company at the time her extended medical leave ran out.  Thus, the plaintiff asserts that her termination resulted directly from St. Vincent's discriminatory or retaliatory failure to place her in an available position earlier.

### 2. Positions 7, 8, 9, 10, 11, and 12

Although they are most recent chronologically, the court will first address plaintiff's argument raised in her summary judgment brief that St. Vincent's unlawfully discriminated or retaliated against her by not granting her positions numbered 7, 8, 9, 10, 11, and 12, above.  The plaintiff's complaint does not even suggest she was denied the specific vacancies.  In fact, by her own reckoning, none of the vacancies existed until months after she was terminated on or about February 6, 2009 and after she filed her complaint on February 25, 2009.  St. Vincent's could not have possibly denied the plaintiff these positions until sometime after she brought this action.  The plaintiff's pleading does not encompass claims founded upon events that had not yet transpired when it was filed, *see Manning v. City of Auburn*, 953 F.2d 1355, 1359-60 (11th Cir. 1992).  The plaintiff never sought to supplement her complaint with such claims, as authorized by Rule 15(d), Fed. R. Civ. P.  Nor are the plaintiff's arguments in her summary judgment brief referencing such actions by St. Vincent's an effective amendment to the complaint.  *See Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004).  Accordingly, claims based upon St. Vincent's alleged failure

to transfer or otherwise place the plaintiff into positions 7, 8, 9, 10, 11, or 12 after she filed her complaint are not before this court. *See Moore v. Sei Pak*, 2010 WL 4487063, *1-2 (11th Cir. Nov. 10, 2010) (unpublished); *Coon v. Georgia Pacific Corp.*, 829 F.2d 1563, 1568-71 (11th Cir. 1987); *Allen v. Alabama Dep't of Postsecondary Educ.*, 2005 WL 1618581, *4 (M.D. Ala. July 5, 2005). However, the circumstances related to those jobs still may potentially be relevant as background to support other claims that have been pled and are otherwise potentially viable. *See Rathbun v. Autozone, Inc.*, 361 F.3d 62, 76 (1st Cir. 2004); *Freeman v. Madison Metro Sch. Dist.*, 231 F.3d 374, 382 (7th Cir. 2000); *cf. United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558 (1977) (recognizing that a prior discriminatory act which is not made the basis for a timely EEOC charge may be admissible in a proceeding in which the status of a current practice is at issue).

### 3.    Position 1: Surgical Reprocessing Technician, May 2008

The plaintiff claims that St. Vincent's subjected her disability discrimination and unlawful retaliation by failing to grant her request in May, 2008, for a transfer to a part-time SRT position in the Surgical Services department at St. Vincent's St. Clair.  The parties agree that the plaintiff is attempting to prove the claims related to this position by resorting to circumstantial evidence, again calling for application of the *McDonnell Douglas* framework.  St. Vincent's argues that it is entitled to summary judgment on all claims based upon the failure to place the plaintiff in this position, whether based upon the ADEA or the ADA.  St. Vincent's contends that the plaintiff cannot prevail on such claims because, among other reasons, the evidence establishes that this position was not actually an available vacancy when the plaintiff applied for it.

Under the ADA, employers are required to "mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is

24

an applicant or employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of [the employer]."  42 U.S.C. § 12112(b)(5)(A).  Such reasonable accommodation generally may include requiring the employer to reassign or transfer the disabled employee to a vacant position.  42 U.S.C. § 12111(9)(B); 29 C.F.R. § 1630.2(o)(2)(ii); *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1256 (11th Cir. 2001); *Willis v. Conopco, Inc.*, 108 F.3d 282, 284 (11th Cir. 1997).  That reassignment duty, however, does not require the employer to create an entirely new position or bump another employee.  *Lucas*, 257 F.3d at 1256; *Willis*, 108 F.3d at 284; *Terrell v. USAir*, 132 F.3d 621, 626 (11th Cir. 1998); *Diaz v. Transatlantic Bank*, 367 Fed. Appx. 93, 98 (11th Cir. Feb. 24, 2010) (unpublished); *cf. U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 403-05 (2002) (explaining that it will ordinarily be unreasonable for an employer to violate its own seniority system to accommodate an otherwise qualified disabled person in making a transfer selection).  Rather, the employee has the burden at the *prima facie* stage to establish the existence of an available vacant position for which she was qualified.  *See Willis*, 108 F.3d at 284-86; *Reed v. Heil Co.*, 206 F.3d 1055, 1062 (11th Cir. 2000).  This is true generally under federal anti-discrimination and anti-retaliation employment laws.  *See Earley v. Champion Intern. Corp.*, 907 F.2d 1077, 1083 (11th Cir. 1990) (discussing the necessity of showing the existence of an available position to prove a *prima facie* case of age discrimination in the reduction-in-force ("RIF") context); *Phillips v. Southern Bell Tel. & Tel. Co.*, 650 F.2d 655, 658 (5th Cir. July 1981)[6] (rejecting the plaintiff's argument that he might have been subjected to age discrimination in promotions, where there was no evidence that there was a vacancy in a higher position for which he

---

[6]     The decisions of the former Fifth Circuit handed down before October 1, 1981 are binding in the Eleventh Circuit.  *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

was qualified during the 180-day period before he filed his EEOC charge); *Marshall v. Airpax Electronics, Inc.*, 595 F.2d 1043, 1044-45 (5th Cir. 1979) (per curiam) (affirming judgment against a plaintiff on her ADEA failure-to-hire claim where evidence showed that executive secretary position she sought was not actually vacant); *Rutstein v. Avis Rent-A-Car Systems, Inc.*, 211 F.3d 1228, 1238 n.19 (11th Cir. 2000) ("If there never was a job, it would be inappropriate to allow [discrimination] suits against the employer for wrongful rejection."); *Adams v. Groesbeck Ind. Sch. Dist.*, 475 F.3d 688, 691 (5th Cir. 2007) ("An employer does not discriminate or retaliate illegally if it has no job opening."); *Patterson v. McLean Credit Union*, 491 U.S. 164, 187 n.7 (1989) ("[W]e ... emphasize that in order to prove that she was denied the same right to make and enforce contracts as white citizens [to establish race discrimination prohibited by 42 U.S.C. § 1981], petitioner must show, *inter alia*, that she was in fact denied an *available* position." (emphasis original)).

The SRT position was posted as vacant on the St. Vincent's website when the plaintiff submitted an online application for it on May 16, 2008.  In addition, the plaintiff received am e-mail response from St. Vincent's on May 22nd advising that the position for which she applied had been "filled."  Nonetheless, St. Vincent's asserts that the evidence establishes without genuine dispute that the vacancy did not actually exist at that time.  Pointing to the deposition testimony of its HR representatives and documents made exhibits thereto, Haynes and Galipeau, St. Vincent's insists that the vacancy had previously been designated internally as "cancelled," along with others across the system, as part of a 75-day budget restructuring plan, but had remained posted on the website inadvertently.  (*See* Haynes Dep. at 80-87 and PX 7 thereto; Galipeau Dep. at 95-96 and PX 7 & PX 10 thereto).  St. Vincent's emphasizes that the posting on the website was formally closed as "cancelled" by HR manager Davis on May 19, 2008, and that no one was further considered for the

26

position at that time.  (*See* Hayes Dep. at 84-87; Galipeau Dep. 95-96 and PX 10 thereto; *see also*
PX 2 to Galipeau Dep., "Req." line 140, where the "Filled By" field for the position is blank).

In response, the plaintiff argues that a jury might find that St. Vincent's explanation is a
pretext to hide discriminatory intent.  Specifically, she suggests that one could conclude that the SRT
vacancy actually did exist in mid-May 2008 and that St. Vincent's, upon becoming aware that the
plaintiff had applied for it, decided only then to retract it out of an unlawful, discriminatory animus
or in retaliation the plaintiff's having filed an EEOC charge in November 2008.  The plaintiff relies
upon the e-mail sent to her on May 22, 2008, referencing the SRT position for which she had
applied, which stated that it had been "filled."  That e-mail, however, appears on its face to be merely
a generic response sent to unsuccessful online job applicants.  Indeed, the plaintiff argues in her brief
that the position was filled *not* in May, 2008, when she received that e-mail but, rather, almost eight
months later, on January 11, 2009, by one Brenda Zainer.  (Pl. Summ. J. Brief at 14, ¶ 73; *id.* at 27).
St. Vincent's acknowledges that it awarded a part-time SRT job in the Surgical Services Department
to Zainer on that date.  (*See* PX 7 to Galipeau Dep.; PX 2 to Galipeau Dep., "Req." line 2530).
However, the undisputed evidence in the record is that such SRT vacancy, which is position "6" on
the list of positions the plaintiff claims she was unlawfully denied, was not posted until December
4, 2008.  (PX 7 to Galipeau Dep.; PX 2 to Galipeau Dep., "Req." line 2530).  Given a notation in
St. Vincent's online system written by HR manager Davis that the December vacancy was "a
position that was on position manager [St. Vincent's HR software program] and pulled back in April
during the 75 day plan," there is little doubt that this was indeed the same "job" for which plaintiff
had applied in mid-May 2008.  Nonetheless, the fact that the job was re-posted and then filled some
seven to eight months later is not inconsistent with St. Vincent's explanation that the prior vacancy

associated with the job had been recalled as part of an effort to bring hospital operations in line with budgetary constraints for that fiscal year.  *Cf. Benson v. Tocco, Inc.*, 113 F.3d 1203, 1212 (11th Cir. 1997) (The "availability of a job for which the plaintiff may be qualified eight months after an RIF [reduction in force] is not proof that the same job existed at the time of the RIF.").  Ultimately, the plaintiff has not identified specific evidence to challenge the existence or scope of the budget plan. Plaintiff has offered no evidence that the SRT vacancy was one of many positions eliminated pursuant to the plan, that the position was posted online because of an oversight, or that the position was not actually filled.  *Cf. Kelsey v. Donley*, 2010 WL 1768577, *8 (S.D. Fla. May 4, 2010) (holding that ADEA plaintiff had failed to raise an issue of fact as to whether a "Club Assistant" position was available at the time of her termination where she failed to rebut the defendant's evidence that the notice for the "position was posted in error, was never filled, and does not exist ....").

Plaintiff's claim of circumstantial evidence to support the suggestion that an unlawful bias motivated St. Vincent's to eliminate the SRT vacancy only after she applied for the specific purpose of keeping her from transferring to it is without merit.  With respect to alleged disability-related discrimination, St. Vincent's had not only granted the plaintiff FMLA leave without incident but also had granted her a continuing medical leave of absence in April, 2008, after her FMLA leave expired. In fact, St. Vincent's had *invited* the plaintiff in writing to apply for such extended medical leave, which is made available voluntarily by the company rather than pursuant to a legal mandate, less than a month before St. Vincent's cancelled the posting for the Surgical Reprocessing Tech position. (DX 15 to Pl. Dep.).  Likewise as to retaliation, any causal link based upon the temporal proximity

between St. Vincent's notice of the plaintiff's first EEOC charge,[7/] which St. Vincent's appears to have received sometime in December, 2007, and the closing of the job posting on May 19, 2008, is tenuous.  *Cf. Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) ("the cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a *prima facie* case uniformly hold that the temporal proximity must be 'very close.'") (citations omitted); *Garrett v. University of Ala. at Birmingham Bd. of Trustees*, 507 F.3d 1306, 1317 (11th Cir. 2007) (a gap of "more than four and one-half months" between the employer's knowledge of the plaintiff's protected activity and an adverse employment action was not sufficiently close in time to establish a *prima facie* case of retaliation).  Further, it appears the plaintiff applied for another vacancy posted on St. Vincent's website, a Lab Clerk job at St. Vincent's East, in late May or early June 2008.  St. Vincent's deemed the plaintiff qualified for the position and invited her for an interview.  Although the plaintiff withdrew her name from consideration when she realized that the position was not at St. Clair as she had thought, St. Vincent's conduct establishing a receptive attitude toward the plaintiff relative to that vacancy belies her assertion that St. Vincent's intentionally eliminated the prior SRT opening for the sole purpose of keeping it from her.

The record establishes as a matter of law that the SRT position for which the plaintiff applied in May, 2008, was not actually an available job vacancy.  Accordingly, the plaintiff's request for a transfer to that position was not a reasonable accommodation under the ADA.  Nor can St. Vincent's

---

[7/]     The plaintiff filed her second or amended EEOC charge on May 30, 2008, only after the plaintiff was notified on May 22, 2008, that she did not receive the SRT position for which she applied on May 16, 2008.  Thus, the May 30th EEOC filing could not have possibly played any role in St. Vincent's failure to award the plaintiff that particular position.

failure to award her that position support liability for age discrimination or retaliation under the ADEA. St. Vincent's motion for summary judgment is due to be granted as it relates to all claims based on this position.

### 3.    Positions 2, 3, 4, 5, and 6

Next, the plaintiff contends that St. Vincent's unlawfully discriminated and retaliated against her by failing to transfer her to five day shift positions during time that she was out on an extended medical leave of absence, as follows:

(2) Unit Secretary, Emergency Department, open from 7/8/08 to 8/18/08;
(3) Unit Secretary, Emergency Dept., open from 8/29/08 to 9/2/08;
(4) Unit Secretary, Medical/Surgical Dept., open from 9/30/08 to 11/4/08;
(5) Unit Secretary, Emergency Dept., open from 10/23/08 to 11/7/08; and
(6) SRT, Surgical Services, part-time day shift open from 12/4/08 to 1/11/09.

St. Vincent's maintains that it is entitled to summary judgment on all claims arising from these vacancies based on several different theories.

### a.    No Formal Application

St. Vincent's first contends that it is entitled to prevail on all of these claims, whether based on discrimination or retaliation prohibited by either the ADA or the ADEA, because it is undisputed that plaintiff did not submit a formal application for any of the five positions. Where the employer adheres to a policy of publicly noticing job vacancies and requiring formal applications, a plaintiff alleging a discriminatory or retaliatory failure to hire, transfer, or re-hire has the burden to show as part of her *prima facie* case that she applied for specific vacant positions she claims to have been unlawfully denied. *See McDonnell Douglas Corp.*, 411 U.S. at 802 (stating that a plaintiff could make a *prima facie* case of discriminatory failure-to-rehire by showing, among other things, "that he applied and was qualified for a job for which the employer was seeking applicants"). Thus, where

30

the employer follows a formal notice posting and application process for specific jobs, it is not enough for a plaintiff to merely express an interest in being considered for open positions generally. *See Smith v. J. Smith Lanier & Co.*, 352 F.3d 1342, 1345-46 (11th Cir. 2003) (per curiam) (plaintiff's general statement at time of her dismissal in a RIF that she was willing to take any open position within the company, without submitting a written application for any specific job, did not impose a duty on the employer to consider her for open positions it had publicized; plaintiff thus failed to establish a *prima facie* case of age discrimination); *cf. Chapman*, 229 F.3d at 1037 n.31 ("Implicit in Chapman's contentions ... is the premise that an applicant can, by the simple expedient of expressing an interest in all open positions, put on an employer filling a large number of positions the burden of proffering reasons for not hiring the applicant for each position.  That would be quite a burden.").  The Eleventh Circuit has explained:

> The application requirement is important to establishing [a presumption of discrimination in a *prima facie* case] because it shows that the decision-maker knew about the plaintiff and the plaintiff's interest in the position.  *See Carmichael v. Birmingham Saw Works*, 738 F.2d 1126, 1133 (11th Cir. 1984).  If a decision-maker is unaware of the plaintiff's existence, then he is simply unable to discriminate against her, and any presumption of discrimination is unfounded.  *See Pressley v. Haeger*, 977 F.2d 295, 297 (7th Cir. 1992) ("An empty head means no discrimination."), quoted in *Silvera v. Orange County Sch. Bd.*, 244 F.3d 1253, 1262 (11th Cir. 2001).

*Walker v. Prudential Property & Cas. Ins. Co.*, 286 F.3d 1270, 1275-76 (11th Cir. 2002).

St. Vincent's HR managers Galipeau and Haynes have testified that it is St. Vincent's policy that all job vacancies are subject to a formal online posting and application process, whereby each is entered by HR personnel into a "Position Manager" software program that automatically posts them online, both on St. Vincent's password-protected intranet site accessible only to St. Vincent's

employees and on its internet site, which can be viewed by the general public.[8]   (*See* Haynes

("Haynes Decl."), Doc. 14-2, ¶¶ 4-5; Haynes Dep. at 20-22, 43-44, 87-88; Galipeau Dep. at 58-66,

69, 73-74, 77, 79-80).  Hayes further explained that potential job-seekers can also narrow their search

on the site in several ways, so as to restrict results to return openings only at a particular facility,

within a class of jobs, or by shift schedule.  (Haynes Decl. ¶ 4).  Galipeau's testimony and St.

Vincent's HR records also suggest that the five particular positions now under discussion were

entered into the software program and thus, according to the testimony of Galipeau and Haynes,

would have posted online automatically.  (*See* PX 2 to Galipeau Dep. at 2, Bates D00894, "Req."

field lines LD1013 (position 2); 2375 (position 3); 2399 (position 4); 2446 (position 5); and 2530

(position 6)); PX 3, PX 6, PX 7, and PX 9 to Galipeau Dep.).

While admitting that St. Vincent's does post some job vacancies, the plaintiff argues that the

evidence also reasonably supports that St. Vincent's often did not do so, including with any of the

positions numbered 2 through 10 on the list of jobs she claims she was unlawfully denied.  If the

record were to support an inference that these openings were not publicly posted, it would be

significant because where an employer uses secretive, "word of mouth," or similar informal methods

to fill job vacancies, a plaintiff can establish a *prima facie* case of discrimination despite a failure

to formally apply because the employer in such circumstances "has a duty to consider all those who

---

[8]     At least during some period relevant to this action, St. Vincent's policy was to post each job vacancy for 72
hours on its intranet site before posting it publicly on the internet.  (Haynes Dep. 87-89; Galipeau Dep. at 61-62,
79-80, 90-92).  Haynes suggests that the current policy is to post vacancies simultaneously on its intranet and
on the internet site, although she is uncertain when that policy change may have occurred.  (Haynes Dep. 87-
89).  However, whether or when any of the five positions discussed in the text posted on the internet versus the
intranet is also immaterial to the summary judgment analysis.  This is because it is undisputed that the plaintiff
had access to the intranet site up until she was formally terminated in February, 2009, and none of the five jobs
was vacant past January 11, 2009.  Accordingly, to the extent that those positions were posted only on St.
Vincent's intranet, the plaintiff could have had access to view all of them.

might be reasonably interested as well as those who have learned of the job opening and expressed an interest." *Carmichael*, 738 F.2d at 1133; *see also Roberts v. Gadsden Mem. Hosp.*, 835 F.2d 793, 798-99 (11th Cir. 1988); *Jones v. Firestone Tire & Rubber Co.*, 977 F.2d 527, 533 (11th Cir. 1992). While the plaintiff did not formally apply for any of the five positions at issue, it is undisputed that upon taking extended medical leave and periodically thereafter she expressed to St. Vincent's her desire to be considered for any available day shift positions at the St. Clair facility for which she was qualified. (*See* PX 1, PX 6, & PX 8 to Haynes Dep.) If the record establishes as a matter of law that St. Vincent's adhered to a formal posting and application process for these five vacancies, the plaintiff's failure to submit an application would be fatal to her claims; her expressions of interest in open positions generally would be inadequate to require St. Vincent's to consider her for particular positions for which she submitted no actual application. *Smith*, 352 F.3d at 1345-46. Conversely, however, if a jury might find that St. Vincent's did not publicly post these vacancies, the plaintiff's expressions of interest would be enough to establish a *prima facie* case, and St. Vincent's would not be entitled to summary judgment based on the lack of a formal application alone. *See Carmichael*, 738 F.2d at 1132 (where the employer did not advertise job openings and told the plaintiff that no full-time jobs were available, the plaintiff "was not required to do more than indicate as best he could that he would take any available job."). The question becomes whether the record reasonably supports an inference that St. Vincent's did not post these vacancies online.

In her affidavit, the plaintiff states that, upon beginning her extended medical leave of absence in May, 2008, she went online to St. Vincent's website and attempted to view posted vacancies at least once, usually twice, per week, varying her search queries, using both broad and narrow search parameters, based on facility, shifts, hours, and other factors. (Pl. Aff. ¶¶ 32-33). The

plaintiff further explained at her deposition that her searches employed queries that did not restrict results in any way other than to vacancies at the St. Clair facility. (Pl. Dep. at 66-67). Despite this, she claims, none of the position vacancies numbered 2 through 10 appeared in any of her online searches where she could apply for them. (Pl. Aff. ¶ 34).

There is also documentary evidence that tends to corroborate the plaintiff's allegations in this regard. Specifically, the record includes a printout display of an online job search that the plaintiff appears to have performed on June 14, 2009, on St. Vincent's website. (*See* DX 19 to Pl. Dep.; Pl. Dep. at 71-72). That printout indicates that, consistent with her above-referenced deposition testimony, the plaintiff's search on that occasion that was limited to vacancies only at the St. Clair facility but otherwise sought "all" results as to both "job category" and "job schedule," the other two search variables. (DX 19 to Pl. Dep.). The plaintiff's search, which should have thus returned all active non-physician vacancies then existing at the St. Clair facility, returned only three: (1) a Licensed Practical Nurse ("LPN") in the Medical/Surgical Department, (2) a Registered Nurse ("RN") in the Emergency Department, and (3) an RN in Surgical Services. (DX 19 to Pl. Dep.). However, a "Requisition Log" printout from St. Vincent's Position Manager system (PX 2 to Galipeau Dep.; *see also* Galipeau Dep. at 67-68) indicates that, in addition to the two RN positions and the LPN job referenced above, there were eight other vacancies listed as having opened prior to June 14, 2009, and not filled until after that date.[9]  Galipeau and Haynes suggest that there can be

---

[9]   The Position Manager report indicates that the following positions had been opened by June 14, 2009, and were not yet closed:

(1)      Req. 2735, RN, Med./Surg., open date 3/23/09, filled by Katrina Thomas, close date 6/29/09;

(2)      Req. 2745, RN, ICU, open date 4/2/09, filled by Julie Winnett-Howard, close date 6/29/09;

(3)      Req. 2746, RN, Emerg. Dept., open date 4/2/09, filled by Gloria Gilreath, close date 7/27/09;

some delay between the time that a job vacancy actually comes into being with a written request by

a department manager and the time that HR enters the vacancy data into the Position Manager system

and posted online.  (Galipeau Dep. at 79-81, 84-87; Haynes Dep. at 62).  Galipeau further explained

that a vacancy will be withdrawn from the view of potential job applicants searching the online

system once a decisionmaker has communicated to HR that a decision has been made to offer the

position to a particular candidate, notwithstanding that the vacancy is not marked as "closed" until

after HR is notified that the candidate has accepted such an offer. (Galipeau Dep. at 79-81; 84-87).

Accordingly, there can be some "lag" in the system on either end.  Nonetheless, several of the eight

positions that appear on the Requisition Log to have been vacant on June 14, 2009, but were not in

---

(4)     Req. 2E+07, Patient Access Rep., open date 4/15/09, filled by Peggy Walker, close date
        6/15/09;

(5)     Req. 2E+07, Respiratory Therapist, open date 5/19/09, Karen Griffith, close date 7/17/09;

(6)     Req. 2E+07, Patient Care Ass't, Med./Surgical Dept., open date 5/26/09, Peggy Walker,
        close date 6/15/09;

(7)     Req. 2E+07, RN, ICU, open date 5/29/09, filled by Julie Wilkins, close date 6/29/09;

(8)     Req. 2E+07, Unit Secretary, Emerg. Dept., open date 5/29/09, filled by Courtney Lang, close
        date 6/29/09;

(9)     Req. 2E+07, RN, Med./Surg., open date 5/29/09, filled by April Carly, close date 6/29/09;

(10)    Req. 2E+07, LPN, Med./Surg., open date 6/2/09, filled by Salina Hays, close date 7/17/09;
        and

(11)    Req. 2E+07, RN, Surg. Services, open date 6/11/09, filled by Dawn Burkell, close date
        6/29/09.

(PX 2 to Galipeau Dep., Bates D00895).  Numbers 3, 10, and 11, above, appear to correspond to the three
vacancies that were returned in the results of the plaintiff's online search of June 14, 2009, memorialized by
Exhibit 19 to the plaintiff's deposition.  The only positions that the plaintiff has asserted that she was qualified
and should have been considered for are the Patient Access Representative (number 4, above, which is also
position 7 on the court's list of the 12 positions the plaintiff claims she was unlawfully denied following her
FMLA leave) and Unit Secretary in the ER (number 8 on both lists).

the results of the plaintiff's online search that day are listed as having opened before and/or closed after or on the same date as the three nursing vacancies that were returned in that search. At least absent additional evidence, there is no obvious reason for why the other eight positions were not returned by the plaintiff's search other than that such vacancies were not posted so as to be viewable online by prospective job applicants.[10]

St. Vincent's has not undertaken in its reply brief to confront the plaintiff's above testimony regarding her continued, fruitless searches on St. Vincent's website. Rather, St. Vincent's merely reasserts that its policy is to post all job vacancies online and that the plaintiff failed to submit a formal application for these positions. However, based upon the plaintiff's foregoing testimony regarding the frequency, content, and results of her online searches; the printout of the results of the plaintiff's June 14, 2009 search; and the Position Manger report, a jury could reasonably find that St. Vincent's did not publicly post positions 2 through 6.[11]  Therefore, St. Vincent's is not entitled

---

[10]   The record also contains an e-mail from Haynes to Davis dated October 29, 2008, in which Haynes stated, "Right now doesn't look like you have any openings that she [the plaintiff] would be qualified for that are day shift." (PX 9 to Haynes Dep.) Haynes believes that she had just run a search of available positions at the St. Clair facility in the Position Manager system. (Haynes Dep. at 110-11). However, the Requisition Log evidences two Unit Secretary vacancies at St. Clair for which the plaintiff was qualified that had opened previously and not yet been filled. (PX2 to Galipeau Dep., Bates D00894). The first (position 4) was in the Medical/Surgical Department, Req. no. 2399, open from 9/30/08 to 11/4/08. The second (position 5) was in the Emergency Department, Req. no. 2446, open from 10/23 to 11/7. If those positions were publicly posted in the Position Manager system, it is unclear why a search by Haynes on October 29, 2008 would not have revealed them. This is further evidence tending to suggest that St. Vincent's did not publicly post all available job vacancies.

[11]   In reaching this conclusion, the court has not considered the plaintiff's affidavit testimony that she "knew from talking to friends who still worked at [the St. Clair facility] that positions for which [she] was qualified were coming available and were not appearing online." (Pl. Aff. ¶ 35; see also id. ¶ 32). St. Vincent's has moved to exclude such testimony as hearsay. The plaintiff's testimony is indeed admissible on that basis to the extent that it is offered to prove that positions for which she was qualified were coming available and were not appearing online. The plaintiff argues that her statement is admissible because it is offered to explain her own state of mind and motives in continuing to contact St. Vincent's about her inability to find available positions online and communicate her ongoing desire to be considered for any job for which she might be qualified. However, the court need not determine at this point whether the statement might be admissible for that purpose. It is enough to say here that the plaintiff's knowledge is not relevant to whether St. Vincent's did, in fact, post vacancies online, which is the question the court is now addressing.

to summary judgment on any claims arising out of St. Vincent's failure to place the plaintiff in those positions based on the fact that she did not submit a formal application for them.  Further, to the extent that the plaintiff alleges that St. Vincent's denied her these positions in retaliation for filing EEOC charges or other protected conduct, the lack of an application is the only basis that St. Vincent's has argued in support of its asserted entitlement to summary judgment on such claims. (Dfts. Brief, Doc. 15, at 17).  Accordingly, St. Vincent's dispositive motion is due to be denied as it relates to the plaintiff's ADA and ADEA retaliation claims founded upon St. Vincent's failure to transfer or otherwise place the plaintiff in positions 2, 3, 4, 5, and 6.

### b.        No "Disability" for Purposes of the ADA

To the extent that the claims based on positions 2 through 6 arise under the anti-discrimination provision of the ADA, St. Vincent's contends that it is entitled to summary judgment because the plaintiff's diabetes and hypertension, St. Vincent's contends, did not render her "disabled" within the meaning of that Act, at least as constituted when she was denied these positions.  The ADA prohibits discrimination by employers against qualified individuals with a disability.  *See* 42 U.S.C. § 12112(a).  Thus, in order to establish a *prima facie* case of disability discrimination, a plaintiff must demonstrate that she (1) is disabled, (2) is a qualified individual, and (3) was subjected to unlawful discrimination because of her disability.  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007).  Under the Act, a "qualified individual with a disability" is identified as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).  In turn, a "disability" is defined as:

(A) a physical or mental impairment that substantially limits one or more major life activities of such individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment.

42 U.S.C. § 12102(1).

In *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 482-83 (1999), the Supreme Court interpreted the ADA as requiring courts assessing whether a physical or mental impairment substantially limits a major life activity so as to qualify as a "disability" to consider the effects of measures employed to correct or mitigate the condition, such as medication, diet, and exercise. The Court further attempted to illustrate how its holding might apply to a plaintiff with diabetes as an example. *Id.* at 483. Specifically, while recognizing that diabetics who fail to monitor their blood sugar levels and administer insulin "would almost certainly be substantially limited in one or more major life activities," the Court suggested that a "diabetic whose illness does not impair his or her daily activities" because it is well controlled with medication and other mitigating measures would not be disabled within the meaning of the ADA. *Id.* at 483-84. The Eleventh Circuit subsequently applied that reasoning to a case involving an insulin-dependent diabetic plaintiff. *See Collado v. United Parcel Service, Co.*, 419 F.3d 1143, 1154-57 (11th Cir. 2005).

St. Vincent's argues that it is entitled to summary judgment on the plaintiff's ADA disability discrimination claims because while the plaintiff had been diagnosed with diabetes and hypertension, the evidence establishes, St. Vincent's asserts, that those conditions were sufficiently controlled by medication and diet so as to preclude a determination that it substantially limited any major life activity under the standards articulated in *Sutton* and *Collado*. In response to this argument, the

plaintiff admits that *Sutton* governs her ADA claims to the extent that they are based upon alleged discrimination occurring prior to January 1, 2009, and she further effectively concedes that she cannot establish that she was disabled under *Sutton*.  She maintains, however, that her diabetes does render her disabled for purposes of the ADA as of January 1, 2009, because such is the effective date of the ADA Amendments Act ("ADAAA"), Pub. L. No. 110-325, 122 Stat. 3553 (2008).  See ADAAA § 8; ADAAA § 8; *see also Fikes v. Wal-Mart, Inc.*, 322 Fed. Appx. 882, 883 n.1 (11th Cir. April 10, 2009) (unpublished).  As the plaintiff recognizes, the ADAAA worked a number of substantial changes to the ADA, including an abrogation of *Sutton*'s aforementioned holding, providing in relevant part:

> The determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures such as--
>
> > (I) medication, medical supplies, equipment, or appliances, low-vision devices (which do not include ordinary eyeglasses or contact lenses), prosthetics including limbs and devices, hearing aids and cochlear implants or other implantable hearing devices, mobility devices, or oxygen therapy equipment and supplies;
> >
> > (II) use of assistive technology;
> >
> > (III) reasonable accommodations or auxiliary aids or services; or
> >
> > (IV) learned behavioral or adaptive neurological modifications.

ADAAA § 4; 42 U.S.C. § 12102(4)(E)(i).

By arguing in her brief only that St. Vincent's had a duty to accommodate her disability *after* the ADAAA went into effect (Pl. Brief at 25-26), she has abandoned her ADA discrimination claims to the extent they are based upon alleged discrimination occurring before January 1, 2009.  *See Iraola & CIA, S.A. v. Kimberly-Clark Corp.*, 325 F.3d 1274, 1284 (11th Cir. 2003).  Of the five

vacancies now being discussed, the plaintiff cannot dispute that positions 2, 3, 4, and 5 involve discrimination that necessarily occurred before the effective date of the ADAAA, as they were each filled no later than November 2008.[12/]   Thus, St. Vincent's motion for summary judgment is due to be granted as it relates to the plaintiff's ADA discrimination claims associated with those vacancies.

The plaintiff contends, however, that she can establish that she was disabled under the ADA at the time relevant to her rejection for position 6, the SRT position that was re-posted in December, 2008, and was ultimately awarded to Brenda Zainer.  (Pl. Brief at 27).  St. Vincent's did not acknowledge or otherwise address the ADAAA in its opening brief, and St. Vincent's reply brief does not contest the plaintiff's assertion that her diabetes is a disability under the ADA as amended. Rather, St. Vincent's responds by first arguing that the plaintiff did not apply for any positions other than the "cancelled" SRT vacancy in May, 2008, and the Lab Clerk position at St. Vincent's East for which she later voluntarily withdrew her candidacy.  However, as discussed above, a jury could infer from the evidence that St. Vincent's did not post all job openings, including position 6.  Thus, the fact that the plaintiff did not formally apply for it does not, in itself, defeat her claim.  This is particularly true since the evidence shows that the plaintiff had applied for the very same job when it was posted in May, 2008, before being withdrawn and then being made available again that December.  She had also continued to express interest generally in any available day shift positions at least as late as October 29, 2008.  Such circumstances could impose a duty on St. Vincent's to consider the plaintiff as a candidate for the position, assuming that it was not re-posted when it again became available.  *See Carmichael*, 738 F.2d at 1133.

---

[12/]    The plaintiff's concession that she was not disabled within the meaning of the ADA prior to January 1, 2009 also provides an alternate ground for summary judgment in St. Vincent's favor on the plaintiff's disability discrimination claim related to St. Vincent's failure to transfer her to position 1 in May, 2008.

St. Vincent's also argues in a footnote in its reply brief that any disability discrimination relative to the failure to place the plaintiff in position 6 occurred prior to the January 1, 2009, effective date of the ADAAA.  (*See* Dfts. Reply Brief, Doc. 26, at 7-8 n.3).  Thus, St. Vincent's contends, the plaintiff was not disabled within the meaning of the ADA at the time of the allegedly discriminatory act, so her *prima facie* case fails.  In support, St. Vincent's relies upon a printout from the Position Manager system regarding position 6.  (PX 7 to Galipeau Dep.).  In a box for "HR Notes," there is a typed entry, "Hold for Brenda Zainer," which appears to have been authored by the HR manager at the St. Clair facility, Lisa Davis,  (*Id.*)  St. Vincent's emphasizes that Galipeau's testimony establishes without dispute that a "hold" would have been placed only after candidates were interviewed and a decision had been made to offer the position to a specific candidate.  (Galipeau Dep. at 84-85).  St. Vincent's contends that "it is evident that Zainer was interviewed and selected for the position on or before December 29, 2008" (Dfts. Reply Brief at 8 n.3), because such is the date that the Position Manager printout for position 6 states that it was "Last Modified."  (PX 7 to Galipeau Dep.).

The evidence cited by St. Vincent's does not establish as a matter of law that the plaintiff was rejected for this position before January 1, 2009.  Ultimately, the Position Manager record expressly states that the position was not "filled" or "closed" until January 11, 2009.  While the Position Manager record states that it was "Last Modified" on December 29, 2008, St. Vincent's points to no evidence related to the significance or interpretation of such an entry on the computer system.  Nor is there any testimony from Davis about any entries she might have made on the page.  Thus, the inferential leap that St. Vincent's invites the court to take, that the decision to award the position to

Zainer was *necessarily* made no later than December 29, 2008, is overly speculative.  St. Vincent's

is not entitled to summary judgment on this claim on this ground.

St. Vincent's has also argued that it is entitled to summary judgment on all ADA disability

discrimination claims, which would include this one, on the theory that it necessarily satisfied its

obligation to "accommodate" any disability of the plaintiff simply by virtue of the fact that, after the

expiration of her FMLA leave, she was "allowed" to search for available positions online and apply

for them while she remained out on an extended medical leave of absence. (Dfts. Brief at 15-16).

St. Vincent's emphasizes that its voluntary extended leave of absence policy permitted the plaintiff

to continue her benefits at a time when St. Vincent's could have simply fired the plaintiff at the end

of her FMLA leave.  It might be assumed, as St. Vincent's argues, that an employer may satisfy its

ADA responsibilities in a case like this one, where the plaintiff's sought accommodation is a transfer

to a day shift job, just by posting all available job vacancies online and directing the plaintiff to

conduct her own search of the postings and to notify the employer of her desire to be placed in one

or more specific positions.[13]  However, as discussed previously, there is evidence from which the

---

[13]    The plaintiff argues that St. Vincent's had an obligation to engage in an "interactive" process, which to her thinking encompasses substantially more than directing her to conduct her own online search.  Rather, she suggests that the ADA requires an employer to perform its own investigation for suitable, available positions and then communicate directly to the plaintiff about any jobs that might fit the bill.  An applicable regulation does provide that "[t]o determine the appropriate reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process with the qualified individual with a disability in need of the accommodation.  This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." 29 C.F.R. § 1630.2(o)(3).  The court doubts that the regulation requires the sort of active employer investigation and communication contemplated by the plaintiff.  But even if it did, an employer is not liable under the ADA in this circuit based solely upon a failure to engage a plaintiff in an "interactive process"; the plaintiff must still show that the employer ultimately failed to provide an available and otherwise reasonable accommodation of the plaintiff's disability. *See Willis*, 108 F.3d at 285; *Moses v. American Nonwovens, Inc.*, 97 F.3d 446, 448 (11th Cir. 1996) (per curiam); *McKane v. UBS Fin. Serv's, Inc.*, 363 Fed. Appx. 679, 681-82 (11th Cir. Jan. 21, 2010) (unpublished). That is, the plaintiff must show that positions for which she was qualified were, in fact, available at the relevant time, not just that St. Vincent's did not take certain steps in an effort to identify such positions.

jury might infer that St. Vincent's failed to post numerous positions online, including many for which the plaintiff appears to have been qualified.  This would have prevented the plaintiff from being able to find the jobs herself and apply for them.  Therefore, a jury might find that St. Vincent's did not comply with its ADA accommodation responsibilities even as St. Vincent's conceives them to have been.  Even further assuming that the plaintiff had been terminated at the end of her FMLA leave on or about April 30, 2008, that would not itself preclude her from here asserting ADA discrimination claims against St. Vincent's based upon its failure to place her in available job openings thereafter.  The ADA applies to job applicants as well as current employees and requires an employer to make reasonable accommodation to the known disabilities of both groups, 42 U.S.C. § 12112(b)(5)(A), and it likewise prohibits employers from denying employment opportunities to either group based upon a desire to avoid having to make a reasonable accommodation.  *Id.*, ¶ 12112(b)(5)(B).  Thus, even if the plaintiff were no longer formally a St. Vincent's employee, her claims would be subject to a similar analysis using a "failure-to-hire" paradigm, rather than related "failure-to-transfer" analysis.  St. Vincent's would have a duty to consider the plaintiff as a candidate for available day shift positions under *Carmichael* and its progeny based upon the evidence that St. Vincent's did not follow the formal job posting procedure and the evidence that the plaintiff had applied for the same position when posted previously and that she continued thereafter to articulate her interest in being considered for any available day shift positions for which she qualified at the St. Clair facility.  St. Vincent's is not entitled to summary judgment with regard to her disability discrimination claim premised upon her non-selection for position 6.

43

### 4.     Termination

Finally, St. Vincent's contends that it is entitled to summary judgment on the plaintiff's claims stemming from her termination.  St. Vincent's refers the court to evidence that the plaintiff's termination was the result of an application of its policy that an employee is discharged if he or she is not in a position with the company upon the expiration of approved medical leave.  St. Vincent's maintains that the plaintiff cannot show that such proffered reason is a pretext for unlawful discrimination or retaliation.

The plaintiff does not question the existence of St. Vincent's policy, nor does she dispute that it affirmatively required her discharge at the end of her extended medical leave of absence because she was without a position.   Indeed, she expressly acknowledges that her termination was "automatic" under the policy once her leave of absence ended without a position having been secured.  (Pl. Summ. J. Brief at 27-28).  She also does not claim that St. Vincent's allowed anyone else to remain employed after their leave expired without being in a job.  The plaintiff urges instead that she was without a position at that time only because of St. Vincent's unlawful acts of discrimination and retaliation in denying her placement in available job vacancies before her leave of absence ended.   She therefore argues that because her termination "was simply the natural product" of prior discriminatory or retaliatory decisions to exclude her from available day shift jobs (*id*. at 27), she is entitled to pursue claims based upon the discharge itself.  That legal theory is highly dubious.  If the discharge were merely the product of the company's application of the neutral policy, the termination decision would not give rise to a separate and distinct violation of the ADA or the ADEA, notwithstanding that prior discriminatory acts or decisions directly created the conditions calling for the plaintiff's termination under the policy. *Cf. Delaware State College v. Ricks*, 449 U.S.

250, 257-58 (1980) (discharge of the plaintiff not shown to be itself discriminatory was not actionable based on the fact that it resulted directly from an allegedly discriminatory decision one year earlier to deny tenure); *Chardon v. Fernandez*, 454 U.S. 6, 8 (1981) (per curiam) (same, noting, "The fact of termination is not itself an illegal act."); *Evans*, 431 U.S. at 557-58 (plaintiff could not maintain Title VII claim based upon employer's facially neutral seniority system even though it gave present effect to past discriminatory decisions); *Turlington,* 135 F.3d at 1434-35 (employer's facially neutral decision to deem the plaintiff unqualified for a promotion to a particular position was not actionable even if the plaintiff was rendered unqualified because of the employer's prior discriminatory training practices). At least generally speaking, "[a] new violation does not occur ... upon the occurrence of subsequent nondiscriminatory acts that entail adverse effects resulting from ... past discrimination.  But of course, if an employer engages in a series of acts each of which is intentionally discriminatory, then a fresh violation takes place when each act is committed." *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618, 628 (2007), superseded in part by statute as stated in *Lerman v. City of Fort Lauderdale*, 346 Fed. Appx. 500, 502 (11th Cir. Sept. 28, 2009) (unpublished).  Thus, the plaintiff must affirmatively show that the decision to terminate her employment was itself motivated by prohibited discrimination or retaliation in order for her to recover for that particular adverse action.[14]

 As the foregoing discussion hints, the court has significant doubts regarding whether the plaintiff has presented sufficient evidence to support any claim founded on her termination. Nonetheless, the court is going to exercise its discretion to deny St. Vincent's motion for summary

---

[14] That is not to imply that a dismissal of claims founded upon the termination decision would in these circumstances necessarily limit the relief available to the plaintiff if she were to prevail on a separate claim alleging that she was unlawfully denied placement in one or more day shift positions prior to her termination.

judgment as on the discharge claims. *See* Comments to 2007 Amendments to Rule 56, Fed. R. Civ.

P.; *Marcus v. St. Paul Fire & Marine Ins. Co.*, 651 F.2d 379, 382 (5th Cir. 1979). St. Vincent's has

not been able to establish that it is entitled to summary judgment on all of the plaintiff's underlying

transfer claims, so those claims would have to be tried regardless. Given that, the court can at least

conceive that the plaintiff might be able to establish that St. Vincent's harbored a discriminatory or

retaliatory animus that motivated not only those transfer denials but also the closely related decision

to terminate her employment.

## IV.    CONCLUSION

Based on the foregoing, St. Vincent's motion for summary judgment (Doc. 14) is due to be

GRANTED IN PART AND DENIED IN PART. It is due to be GRANTED as it relates to the

following claims of the plaintiff:

(1)     the ADEA age discrimination claim based upon the plaintiff's rejection for the OR
        Unit Secretary position in the fall of 2007;

(2)     the ADA disability discrimination and ADEA and ADA retaliation claims based
        upon the failure to place the plaintiff in position 1, the SRT position in Surgical
        Services, in May, 2008;

(3)     the ADA disability discrimination claims based on the failure to place the plaintiff
        in four Unit Secretary vacancies, namely position 2 – in the Emergency Department,
        August, 2008; position 3 – also in the Emergency Department, September, 2008;
        position 4 – Medical/Surgical Department., November, 2008; and position 5 – in the
        Emergency Department, November, 2008.

Those claims are all due to be DISMISSED WITH PREJUDICE.  St. Vincent's motion for summary judgment is otherwise due to be DENIED.

St. Vincent's motion to strike (Doc. 27) is due to be granted in part, as set out herein, and otherwise denied.

This leaves the following claims of the plaintiff potentially viable at this point in the litigation:

(1)    the ADA and ADEA retaliation claims based upon the failure to place the plaintiff in positions 2, 3, 4, and 5, identified above;

(2)    the ADA disability discrimination claim and the retaliation claims under the ADA and the ADEA based on the failure to place the plaintiff in position 6, an SRT post in Surgical Services in December 2008/January 2009;

(3)    the ADA disability discrimination and the retaliation claims under the ADA and the ADEA based upon the plaintiff's termination in February, 2009.

A separate order will be entered.

As to the foregoing it is SO ORDERED this the 3rd day of February, 2011.

_____
PAUL W. GREENE
CHIEF MAGISTRATE JUDGE